[No. 13883. Department Two. December 27, 1917.]

MOUNTAIN TIMBER COMPANY, *Respondent*, v. LUMBER INSURANCE COMPANY OF NEW YORK, *Appellant*.[1]

PARTIES—INTERVENTION—RIGHT—TIME FOR APPLICATION. In an action upon a policy of fire insurance, banks having an interest in plaintiff's success by reason of assignment of his claim as collateral are properly allowed to intervene before trial as having an interest in the success of either party, within Rem. Code, § 202, authorizing interventions in such case before trial where no delay is caused thereby.

INSURANCE—ACTION ON POLICY—PARTIES—JOINDER — ASSIGNEE OF COLLATERAL. Where a claim on a fire insurance policy is assigned as collateral security for a debt, it is proper for both assignee and assignor to join as parties plaintiff in an action on the policy.

SAME—FIRE INSURANCE—POLICY—RISK. Spare materials in actual use at the time of the fire kept in stock for use when needed are covered by a policy of fire insurance upon "stock of every description incidental to the business" and "all materials and supplies used in manufacturing, handling and shipping the same."

SAME—FIRE INSURANCE—POLICY. Under a policy of fire insurance on raw materials used in "manufacturing, handling and shipping" the stock, extrinsic evidence is admissible to ascertain the true meaning of the parties, since the quoted words are of doubtful meaning.

SAME. Any ambiguity in a policy of fire insurance is to be construed in favor of the insured.

SAME—FIRE INSURANCE—POLICY—CONSTRUCTION. Where insured stocks of lumber and materials of a mill were stored at four different places, all on the mill site, the mill site constituted one entire location, within the meaning of the average clause of a fire insurance policy providing that upon loss the insurance should attach to the property in the different buildings or locations in the proportion that the value of each building or location should bear to the value of all the insured property.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered May 23, 1916, upon findings in favor of the plaintiff, in an action on a fire insurance policy, tried to the court. Affirmed.

[1] Reported in 169 Pac. 591.

*H. T. Granger*, for appellant.

*Edmund C. Strode, Coy Burnett*, and *A. H. Imus*, for respondent.

Fullerton, J.—The respondent owned and operated a lumber manufacturing plant at Kalama, Cowlitz county, Washington. While it was a going concern, the appellant issued to it an insurance policy covering certain of its property, the material provisions of which, in so far as this controversy is concerned, are the following:

"$ Nil      On Buildings and Machinery.

"$10,000 On stock of every description, incidental to the business, meaning thereby the product of the plant of every description (logs in water excepted) in all stages of manufacture, and all materials and supplies used in manufacturing, handling or shipping same, together with work and other labor thereon, their own, or held by them in trust or on commission, or for which they may be liable, or sold but not removed. All while contained in, on and or under any of the buildings at the assured's plant, on platforms or tramways, or situate anywhere on the mill site of the assured, and in and or on cars on tracks within 100 feet thereof.

"All situate on property owned, leased or occupied by assured as a mill site, and for other purposes incidental to the business, and in or on cars on tracks within 100 feet thereof, adjoining. . . .

"Average Distribution Clause on Contents.

"It is understood and agreed that in event of loss this insurance shall attach to the property herein described in the different buildings and / or locations in the exact proportion that the value of the property in each building and / or location shall bear to the value of the property in all such buildings and / or locations at the time of the fire. This clause applies to second item only."

A loss by fire occurred on July 25, 1914, while the policy was in full force and effect. The parties to the policy being unable to agree on the amount due on account of the loss, this action was instituted to recover on the policy. The action was instituted by the insured as the sole plaintiff. It set

forth in its complaint the policy by copy, averred matters tending to show a loss in excess of the amount of the policy, and further matters showing a right of recovery. The appellant, by answer, put in issue the allegations as to the extent of the loss, and averred affirmatively that, after the occurrence of the fire and prior to the commencement of the action, the insured had transferred, by written assignment, to the Merchants National Bank, of Portland, Oregon, all of its right, title and interest in and to its claim against the appellant arising out of the policy and its right thereunder. The appellant replied, averring that the assignment referred to in the answer was to secure an obligation which it then owed to the bank named, and that it reserved the right to maintain and prosecute in its own name an action for recovery on the policy, should any dispute arise thereunder.

It further appears that, after the assignment to the Merchants National Bank by the respondent, that bank made an assignment of the interest it acquired therein to the Northwestern National Bank, of Portland, Oregon. These banks, prior to the trial of the action, petitioned the court for leave, and were granted leave over the objection of the appellant, to intervene in the action and set up their interests arising out of the assignments mentioned. The cause then proceeded to trial, and resulted in a judgment in favor of the insured and the assignees in the full amount of the policy. The insurance company appeals.

It is assigned that the court erred in granting the banks named leave to intervene. It is contended that the application was not timely, and that it was in effect the substitution of new parties plaintiff. We cannot think either of these contentions well founded. The statute provides (Rem. Code, § 202) that any person may by leave of court, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both, subject to the proviso that no intervention should be cause for delay in the trial of the action

between the original parties thereto. Here the interveners had an interest in the success of the plaintiff; they applied before the trial; and no delay, in so far as the record disclosed, was caused thereby. We think it manifest that the application was made timely.

On the other branch of the objection, we are not disposed to hold, as we are at present advised, that it would have been fatal to the judgment were it found that the order amounted to a substitution of parties plaintiff. But clearly it was not that. The assignment was made as collateral security to an obligation due from the assignor to the assignee. It was not an absolute sale in which all right, title and interest passed. The assignor retained such interest as might not be necessary to satisfy the claim. Both parties were, therefore, proper parties to an action to recover therein, even were they not necessary parties. There could be no error, therefore, in permitting them to join in an action brought to enforce such a recovery.

On the merits of the controversy, it is contended that a large part of the material for which recovery was allowed was not covered by the policy. From the quotations we have made of the provisions of the policy it will be observed that the policy did not cover the buildings or machinery, but covered only "stock of every description, incidental to the business, meaning thereby the product of the plant of every description (logs in the water excepted) in all stages of manufacture, and all materials and supplies used in manufacturing, handling and shipping same." The materials for which the recovery was allowed included pulleys, bushings, shafting, valves, pipes, elbows, tees, unions, nipples, belts, flanges, wire rope, chains, electric light globes, electric wiring, stationery and office supplies, telephone parts, rivets, peavy handles, scoop handles, pickaroon handles, sledge handles, couplings, log screws, and much other material of similar character. It was in evidence that these were not in actual use at the time of the fire, but were spare parts and supplies

kept in stock and used as the necessities of the case demanded.

It is the appellant's contention that the language of the policy above quoted is not broad enough to include articles of the character of these; that the policy refers to materials and supplies used in connection with the stock, that is, raw material necessary to be taken in the manufacture of the finished product, not the materials and supplies kept on hand to keep the machinery used in the manufacture of the finished product in running order, to which sort the materials and supplies enumerated belong. It may be conceded that the language used to describe the insured property is not as clear as it might have been made, but clearly these were supplies necessary to be used in the "manufacture, handling and shipping" of the stock, and the words being of doubtful application, it was proper to resort to extrinsic evidence to ascertain the true meaning of the parties to the policy. Such an inquiry was entered upon at the trial, and we think the showing sufficient to justify the conclusion of the trial court. Without entering into a close analysis of the evidence, it was shown that this policy was one of a series of policies covering different parts of the respondent's property, and that one of such policies covered the "buildings and machinery," of which these articles must have formed a part if they are not such as the respondent contends them to be. It is hardly to be supposed that the appellant intended to duplicate its policies on certain articles, leaving others uncovered, when the object of the insurance was to cover the plant in its entirety. The claims of the insured have been at all times consistent with this construction. It is shown that it was compelled to resort to an action to enforce the policy covering the buildings and machinery, and it at no time claimed that these articles were included in that description. While this is not conclusive as against the insurer, it lends persuasion to the belief that the insured so understood the effect of the policies at the time the insurance was effected.

It is a well established rule, moreover, that any ambiguity in the language of the insurance policy is to be construed in favor of the insured. We so held in the case of *Montana Stables v. Union Assur. Soc.*, 53 Wash. 274, 101 Pac. 882. And here, were the extrinsic evidence not persuasive, we would be constrained to construe the doubtful language of the policy in accordance with the contention of the insured.

Of the property destroyed by the fire and concededly within the terms of the policy, the appellant claims a reduction because of the average clause contained in the policy. It was shown that the stock of lumber and other material on hand at the time of the fire were stored at some four different places on the mill site, and that these were not all destroyed by the fire. The appellant contends that each storage place consisted of a different location within the meaning of the average clause of the policy, and hence the insurance should be apportioned in the ratio that the value of the destroyed part bore to the value of the entire quantity. The court found that the material destroyed was all on the mill site, and that the mill site was one entire location within the meaning of the policy. The evidence showed that a part of the property insured was at a place called the cargo dock, on the extreme north end of the mill site; a part of it at a place called the loading dock, at the extreme south end of the site; a part of it on a dock immediately next to the mill building, and a part of it in the mill building, all being used in one connection. The part saved was on the loading and cargo docks, while that in the other places named was destroyed. It seems to us that these were but separations incident to the business which the insured was conducting, and since they were all on the mill site, were one location within the meaning of the policy, and no more separate than they would have been had the material been placed in a number of separate piles side by side with a passageway between them. It is plain from the language of the clause in question that the purpose of the parties was not to average the loss where the

property in part destroyed was in one location. It is equally plain from the nature of an extensive lumber manufacturing plant that all of its stock cannot be conveniently kept in one pile. The parties, therefore, must have contemplated individual separations, or separations arising from the necessities of the business, and used the language with reference to distinct and separate sites, rather than to separations on a single site. Contracts of insurance, unless the language is so plain as to otherwise forbid, must be construed reasonably and in accordance with the evident intent of the parties. In our opinion, it would not be a reasonable construction, or a construction according to the intent of the parties, to hold from the language here used that the parties thereto contemplated that the insured stock should be treated as in separate locations merely because it was placed in individual piles on the general mill site, yet we must so hold if the appellant's contention is to be sustained. Our conclusion is that the trial court ruled correctly upon the question.

Special attention is called to an allowance made for fuel destroyed by the fire. Our conclusion on the other questions discussed renders a discussion of this immaterial. The losses on the items there mentioned exceed the amount of the policy, as well as the amount of the recovery allowed by the court. This item could, therefore, be deducted without affecting the amount of the recovery.

The judgment is affirmed.

ELLIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.