[No. 18500. Department Two. June 5, 1924.]

# Clyde Thompson, *Appellant*, v. Brotherhood of American Yeomen, *Respondent*.[1]

Insurance (201) — Benefit Insurance — Suspension — Nonpayment of Dues — Notice of Disability — Evidence — Sufficiency. Where a member of a fraternal insurance society was seriously ill and unable to pay her dues, within a clause in the certificate providing that, in such a case, the local lodge shall not allow the certificate to lapse, if notified in writing before the payments are past due, the member is not in default or legally suspended for want of the written notice, where the local lodge had received and acted on verbal notice, paying dues for two months, and refused to pay thereafter only because it had no money for the purpose.

Same (201) — Nonpayment of Dues — Inability to Pay — Duty of Local Lodge — By-Laws — Construction. Under a by-law of a fraternal insurance society to the effect that no local lodge shall allow a member's certificate to lapse because of the member's serious sickness or inability to pay, if written notice is given before the payments are past due, it is the legal duty of the lodge to make the payments.

Same (203) — Suspension — Nonpayment of Dues — Waiver — Agency of Local Lodge. In such a case, the local lodge is the representative of the society, so that the society would be liable on the certificate for the default of the local lodge to make the payments, which would be the default of the society itself.

Same (201). A by-law of a fraternal insurance society to the effect that no person shall become a member who shall be within certain declared occupations, habits and conditions (including pregnancy) refers only to applicants, and not to those who are already members.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered May 7, 1923, upon findings in favor of the defendant, dismissing an action on a benefit certificate, tried to the court. Reversed.

*R. V. Welts* and *I. E. Shrauger,* for appellant.

*Wilbra Coleman,* for respondent.

[1]Reported in 226 Pac. 498.

BRIDGES, J.—The Brotherhood of American Yeomen, defendant herein, has its principal place of business at Des Moines, Iowa. It is a fraternal association. It has branch lodges throughout the United States, and among the rest, one located at Mount Vernon, in this state.

During January, 1920, Mrs. Tina Thompson became a member of the Mount Vernon lodge, and the defendant issued to her a "benefit certificate" calling for $2,500 upon her death, and her husband, the plaintiff, was designated as the beneficiary. The by-laws of the association then or thereafter in force were made a part of the certificate. Mrs. Thompson became pregnant in June, 1921, and was quite sick during most of the period of her pregnancy. On account of sickness she did not pay her regular dues for the months of August and September, 1921, but, upon verbal request, the local lodge advanced the money for her for those two months. On account of sickness she did not pay her dues for the months of October, November and December, 1921, and January of 1922. Before any default she, however, verbally requested the local lodge to pay her dues for those months also, but this it failed and refused to do, apparently because it had no money for that purpose. The dues for each month were payable on the last day of that month and were delinquent thereafter.

It is claimed by the defendant that, early in November, 1921, Mrs. Thompson was suspended because of failure to pay the October dues, and later she was notified in writing by the head lodge of such suspension. About the last of February, 1922, she became very ill and a physician was called. Early in March, 1922, a child was born and Mrs. Thompson died a few days afterwards—on March 4. On February 28, being

about the time the child was expected, and some four
or five days before Mrs. Thompson died, the plaintiff
paid to the correspondent, who was the proper re-
ceiving officer of the local lodge, the delinquent dues,
including those for February.    This money was
promptly sent in to the head lodge, which returned it
to the proper officer of the local lodge, who in turn
tendered it back to the plaintiff, who refused it.    The
plaintiff made due proofs of his wife's death and de-
manded of the defendant the amount of the beneficiary
certificate, which demand was refused, and this suit
followed.    The trial court denied the plaintiff any re-
lief and entered judgment dismissing the action, from
which this appeal is taken.

Inasmuch as some of the by-laws of the respondent
are pertinent to the case, it will be necessary to refer
to them.    Section 113 provides that "no person shall
become a beneficial member  .  .  .  whose occupa-
tion, habits or physical condition shall, in the opinion
of the president, medical director or board of directors
be deemed a prohibited risk.    The following have been
declared to be prohibited occupations.  .  .  ."    Here
follow the names of fifty odd prohibited occupations,
habits and conditions, the forty-first being "pregnant
woman except upon filing waiver as to the same."
Section 167 provides that any member "who shall fail
to pay the regular monthly payments  .  .  .  on or
before the last day of each month, or who is engaged in
any of the prohibited occupations mentioned in § 133
of these by-laws  .  .  .  shall be automatically sus-
pended without any action on the part of any home-
stead or officer or officers and the certificate held by
such member shall immediately become null and void
and all payments made thereon shall be forfeited, pay-
ments to the local correspondent notwithstanding."

Section 166 provides that "no homestead (meaning thereby a local lodge) shall allow a worthy member's certificate to lapse on account of inability through serious sickness or injury, to meet his obligation, provided the homestead, through the foreman or correspondent be notified in writing before the payments are past due of such member's inability to pay . . . and provided that not more than six months' assessments shall be paid for such member by the correspondent without the affirmative vote of the homestead."

The appellant, in his brief, says that the only contention he makes is that Mrs. Thompson was not in default in the payment of her dues and was not legally suspended, and that, at the time of her death, her certificate was in good standing. He relies on the by-laws last quoted, being § 166.

On the other hand, the respondent's position is, first, that no legal duty rested on the local lodge to pay Mrs. Thompson's dues; second, if it had such duty it was not breached here, because the request by Mrs. Thompson that the local lodge meet her assessments was not given in writing, as provided by § 166; third, because the request was not made before the payments were past due; fourth, if the local lodge breached its duty in this regard, the consequences of the breach cannot be visited on the respondent.

We are unable to tell from the record upon what ground or for what reason the trial court entered judgment dismissing the action. We are satisfied that the testimony shows that Mrs. Thompson was unable, because of serious sickness, to make her payments for the months of August, September, October and November, 1921, and January, 1922, and that in that regard she comes within the terms of § 166. While she may

not have been bedridden during all of that time, she was, as a matter of fact, sick a great deal of the time during the whole period of her pregnancy. The only finding made by the trial court on this question was that, at the time the request was made for the local lodge to pay the August and September assessments, Mrs. Thompson "was seriously ill and unable to perform her household duties by reason of such pregnancy." The lodge made investigation regarding her sickness and must have concluded that she was seriously sick during August and September, because it paid her assessments for those months, and indeed the reasons given for not paying for the other months is that there was no money for that purpose.

We are also of the opinion that the testimony shows very clearly that the request that the local lodge pay the dues for August and September was made before those dues became delinquent, and that, before the October assessment became delinquent, a like demand was made of the local lodge to pay that assessment and such others as might accrue while Mrs. Thompson was sick and unable to pay.

Nor do we agree with respondent's contention that appellant cannot bring himself within the provisions of § 166 because the request that the lodge pay the assessments was verbal rather than in writing, as § 166 provides. The purpose was to give the local lodge notice of the member's inability to pay, and it ought to make no difference whether that information was conveyed by word of mouth or by writing, where.it is admitted that the request was made. It is conceded that the correspondent of the local lodge made investigation and learned that Mrs. Thompson was sick, and as a result thereof paid, for the lodge, the assessments due for the months of August and September. The

subordinate lodge treated the oral request as sufficient and acted on it.   Under these circumstances it will not do to say that the appellant has no rights simply because the request was made orally rather than in writing.

A more serious question is whether § 166 of the by-laws is compulsory or discretionary as it affects a local lodge, and if compulsory, whether the head society is bound to pay its certificate notwithstanding it has not received certain payments of dues or premiums.

No cases touching these questions have been cited in the briefs, nor have we found any.   There are two or three cases which treat of somewhat analogous subjects.   In *Federal Life Ins. Co. v. Lewis*, 183 Pac. (Okl.) 975, 5 A. L. R. 637, the policy of insurance provided in substance that, after one year from its issuance and before any default, if the insured furnished proof of total disability, then the insurance company would thereafter pay the premiums for him.   A somewhat similar case is *Wick v. Western Union Life Ins. Co.*, 104 Wash. 129, 175 Pac. 953.   But these cases are not very helpful here.

Contracts of this character which are indefinite as to their meaning, or subject to two constructions, will ordinarily be construed most strongly in favor of the assured and against the assurer.   *Remington v. Fidelity Deposit Co.*, 27 Wash. 429, 67 Pac. 989; *Algoe v. Pacific Mutual Life Ins. Co.*, 91 Wash. 324, 157 Pac. 993; *Mountain Timber Co. v. Lumber Ins. Co.*, 99 Wash. 243, 169 Pac. 591.   The language of § 166 is that no local lodge "shall allow a worthy member's certificate to lapse on account of inability through serious sickness or injury, to meet his obligations. . . ." Thus far the section may not necessarily imply that it would be the legal duty of the local lodge to actually

pay the assessments in the event a member could not; but it goes on to say that "not more than six months' assessments shall be paid for such member by the correspondent without the affirmative vote of the homestead." We are convinced that this section means that it is the legal duty of the local lodge, under proper circumstances, to make the payments for the certificate holder and the latter would be justified in so construing it. One would doubtless be induced by the language of this section to become a member of the society and to take out its benefit certificates. It doubtless has induced many to join this particular society in preference to some other. It would be natural for the holder of such a certificate to think that, if he became sick and could not pay his assessments, they would be paid for him by the local lodge, and in sickness he would have a feeling of security in the belief that he would not lose the benefit of his certificate because of his temporary inability to pay assessments thereon. The by-laws of the society are binding not only upon it and its members but also on the local, or subordinate, lodges. When the Mount Vernon lodge received its charter from the respondent society it received it subject to, and agreed to abide by, the by-laws made by the parent organization. We are, therefore, of the opinion that § 166 imposes upon the local lodge the duty, under proper circumstances, of making payments for its members who, because of serious sickness, are unable to pay.

Nor would the assessments, which we hold should have been paid by the local lodge, be more than the six payments provided by § 166. The assessments for October, November and December, 1921, and January, 1922, together with those for August and September, 1921 (already paid by the local lodge), would be the

six monthly payments. No request was made to pay the February, 1922, assessment; that was not due until the 28th of that month, and on that day the assessment for that month (as well as the others) was tendered.

But is the respondent, which issued the benefit certificate, liable thereon when it has not received from any source the monthly dues, or premiums, on account of the certificate? Must it bear the burden resulting from the failure of the subordinate lodge to pay those assessments? It has been commonly held that a subordinate lodge is the representative—the agent—of the parent society in collecting dues on account of insurance policies or benefit certificates, and that the society is responsible for the action and non-action of its representative in connection with matters which are within the scope and power of the subordinate lodge. In 29 Cyc. 42, treating of mutual insurance, it is said:

"Although the cases are not in accord as to whether the subordinate bodies are the agents of the society in dealing with their members, yet by the weight of authority the local bodies are held to represent the central organization, and as between the members and the society the latter is bound by the acts of the local bodies done within the scope of their authority; and if the facts are such that the local body is as a matter of law the agent of the main body, the society is bound by the acts or omissions of the former, even though it is stipulated in the society's laws or in the benefit certificate that the local body is to be deemed the agent of its members."

See *Peterson v. Modern Woodmen of America,* 127 Wash. 412, 220 Pac. 809.

It is also the general rule of the authorities that if the local lodge make a collection on account of a benefit certificate and fail to remit to the central body, such act will not annul the certificate, because the failure of the society to obtain its moneys is the result of the

negligence or default of its agents, for whose acts it is responsible. 29 Cyc. 177. If, as we have said, it was the duty of the local lodge to pay Mrs. Thompson's assessments, then its failure so to do is the failure of the society itself, and it could no more refuse to recognize the validity of its benefit certificate than if Mrs. Thompson had actually paid the assessment to the subordinate lodge and it had failed or refused to remit to the parent lodge. When the benefit certificate is read in connection with the by-laws made by the society itself, it becomes plain that one of the conditions of the certificate is that it will not lapse for want of payment of dues so long as such payments are not made because of the serious sickness of the member. The by-law which we have been discussing is as much a part of the certificate as if it were actually embodied therein. A contract existed between the society and the holder of the benefit certificate that, under the circumstances mentioned, the member will not suffer and his certificate will not lapse.

Section 113 with reference to prohibited occupations, habits and physical conditions, concerns persons becoming members, and not those who are already members.

It follows from what we have said that neither the local lodge nor the respondent had any power, under the circumstances, to suspend Mrs. Thompson or cause a lapsing of her benefit certificate or a forfeiture of her rights thereunder, and that, at the time of her death, she was a member in good standing and her certificate was enforcible. The judgment is reversed, and the cause remanded with directions to enter a judgment in favor of the appellant.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.