[No. 3996-1. Division One. October 3, 1977.]

ELEANOR V. KIRKLAND, ET AL, *Respondents,* v. OHIO
CASUALTY INSURANCE COMPANY, *Appellant.*

*Clarke, Clarke, Albertson & Bovingdon* and *Fred G. Clarke, Jr.,* for appellant.

*Foulds, Felker & Gelfand, P.S.,* and *Tom H. Foulds,* for respondents.

CALLOW, J.—This case involves a dispute between two insurance companies as to whether liability for a fire loss should be paid entirely by the joint plaintiff, Reliance Insurance Company, as sole insurer of Conduff, the purchaser in possession who had the legal burden of loss, or whether it should be apportioned between Reliance and the defendant, Ohio Casualty Insurance Company, because the policy of each company insured the interest of the seller to Conduff.

On July 1, 1971, Eleanor V. Kirkland and her now deceased husband sold the property which is the subject of this action to David A. Schwab under a real estate contract dated July 1, 1971. A policy of insurance was obtained by Schwab from the defendant, Ohio Casualty Insurance Company, covering the subject property with a contract of sale clause in favor of the plaintiff, Eleanor V. Kirkland, as vendor under said contract. This policy was renewed by the defendant's policy, providing coverage in the amount of $22,000 on the dwelling. This policy was in effect at the time of the loss.

On December 1, 1972, Schwab executed a quitclaim deed in favor of Harvey L. Conduff and wife, subject to the Kirkland–Schwab contract. Conduff obtained insurance covering the property in the amount of $19,000 on the dwelling with the Reliance Insurance Company, effective December 1, 1972. This contract contained the same contract of sale clause showing Kirkland as vendor.

On January 3, 1973, the dwelling was destroyed totally by fire. At the time of this loss, neither policy had been cancelled, and the unpaid balance owed to Kirkland on the Kirkland–Schwab real estate contract was $22,752.55. The Reliance Insurance Company paid Kirkland and Conduff a total of $18,566 ($17,966 to Kirkland and $600 to Conduff).

On May 14, 1973, suit was brought in the name of Kirkland against Ohio Casualty seeking recovery for fire damage in the amount of $22,000, the face of its policy. Ohio Casualty answered, and by affirmative defense asserted that the burden of the loss was on Conduff, who was not named in its policy but was insured by Reliance, which had made payment to Conduff and Kirkland. The affirmative defense claimed that Conduff and Kirkland had been compensated for the fire loss and the suit was an attempt by Reliance to accomplish a recoupment to which it was not entitled.

It was stipulated at trial that Reliance be joined as a party plaintiff, and the trial was conducted as a contest between the two insurance companies as to whether the loss should be borne by Reliance or apportioned between Reliance and Ohio Casualty.

The court found the loss to be $19,950 and held that it should be apportioned between the two companies in the ratio of their respective coverages, i.e., $10,704.88 to be paid by Ohio Casualty, and $9,245.12 to be paid by Reliance. Judgment was entered accordingly. The defendant Ohio Casualty appeals.

The Kirkland–Schwab real estate contract, which Conduff assumed, contained the following standard provisions:

(2) The purchaser agrees, until the purchase price is fully paid, to keep the buildings now and hereafter placed on said real estate insured to the actual cash value thereof against loss or damage by both fire and windstorm in a company acceptable to the seller and for the seller's benefit, as his interest may appear, and to pay all premiums therefor and to deliver all policies and renewals thereof to the seller.

. . .
(4) The purchaser assumes all hazards of damage to or destruction of any improvements now on said real estate
. . .

The quitclaim deed from Schwab to Conduff contained the following clause:

SUBJECT TO Contract of record with Wayne F. Kirkland and Eleanor V. Kirkland, his wife, as sellers, and the Grantor herein as purchasers, recorded July 15, 1971, under Auditor's file No. 2206146. Said contract has an unpaid principal balance of $22,752.55, which the Grantee herein agrees to assume and pay according to its terms and conditions.

Among the findings of fact are:

The Contract of Sale clause in the Ohio policy designating the plaintiff, Eleanor V. Kirkland, as Vendor included the following language:

"It is understood that DAVID A. SCHWAB (hereinafter termed Vendee) has an interest in the property described under Item(s) A of this policy, by virtue of contract of sale from ELEANOR V. KIRKLAND (hereinafter termed Vendor), whose mailing address is 128 North 77th, Street, Seattle, Washington 98103.

"If loss under this policy be payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy shall be first applied to the payment of such payee's interest, and the balance, if any, subject to all the terms and conditions of the policy, shall be payable to said vendor and/or said vendee in the manner hereinafter provided in paragraphs designated "First" and "Second" hereof. If this policy be not payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy, subject to all its terms and conditions, shall be payable to said vendor and/or said vendee as follows:

"FIRST: To said Vendor, to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

"SECOND: The balance, if any, to said Vendee.

"PROVIDED ALWAYS, however, that in no event shall any of the above payments or the aggregate thereof, exceed the amount for which this policy is written, or the amount for which this company may be liable on any

loss thereunder; and provided further, that if at the time of any loss hereunder there be other insurance, whether valid or not, upon the property described under the item(s) specified in this contract of sale clause, this company shall not be liable under this policy for a greater proportion of any loss on said property than the amount insured by this policy under such item(s) bears to the entire insurance covering such property issued to or held by any party or parties having an insurable interest therein as vendor, vendee, mortgagee, trustee or beneficiary under deed of trust."

Finding of fact No. 3.

Schwab and his wife were the only persons signing the Quit Claim Deed from Schwab to Conduff. There was no agreement between Schwab and plaintiff Kirkland to substitute Conduff for Schwab in the Kirkland–Schwab Contract of Sale. Schwab continued liable to Kirkland for the performance of said contract, and continued to have an insurable interest in subject property.

Finding of fact No. 5.

Conduff obtained insurance covering said property in the amount of $19,000.00 on the dwelling with the plaintiff, Reliance Insurance Company, effective December 1, 1972. The Reliance policy had the identical Contract of Sale clause as in the policy of defendant, Ohio Casualty Insurance Company, and which Reliance clause also designated Mrs. Eleanor Kirkland as the Vendor.

Finding of fact No. 6.

On January 3, 1973, the subject dwelling was destroyed by fire and at the time of this loss, neither the Ohio policy nor the Reliance policy had been canceled, and both the Ohio policy and the Reliance policy were in effect.

Finding of fact No. 7.

The issue presented is whether the two insurance policies, both containing an "other insurance" clause and acquired to cover the same risk and loss payee, should each contribute proportionately to the loss.

## Who Should Bear the Risk of Loss?

Ohio Casualty first asserts that upon receiving the quit-claim deed from Schwab, Conduff assumed all his assignor's rights and obligations under the real estate contract, including the total risk of loss and the duty to keep the premises insured for the contract vendor's benefit. Ohio Casualty states that if there had been no insurance whatsoever, the loss would fall upon Conduff, and, therefore, the ultimate legal risk of loss is upon Reliance.

The findings of fact were uncontroverted that Schwab had executed a quitclaim deed in favor of Conduff, subject to the Kirkland–Schwab contract of sale, that there was no agreement between Schwab and Kirkland to substitute Conduff for Schwab in the Kirkland–Schwab contract of sale, and that Schwab continued to be liable to Kirkland for the performance of the contract and continued to have an insurable interest in the property. Ohio Casualty acknowledges that Kirkland, Schwab and Conduff all had insurable interests, and agrees that Kirkland should receive the full amount of the $19,950 loss sustained. Ohio Casualty insists that Reliance should contribute the full amount of its policy, $19,000, and that Ohio Casualty should pay only $950 balance.

It is true that had the loss occurred with no insurance having been secured whatsoever, the ultimate loss would have fallen on the last purchaser in line. However, there was no direct obligation on the part of the assignee–grantee Conduff to perform in accordance with the terms of the Kirkland–Schwab real estate sale contract. *See generally* 8A G. Thompson, *Commentaries on the Modern Law of Real Property* § 4459 (1963 repl.); 77 Am. Jur. 2d *Vendor and Purchaser* § 394 (1975). In addition, the original vendor, Kirkland, had not released the vendee Schwab from responsibility for performance under the initial contract. Schwab retained an insurable interest and liabilities following the assignment to Conduff, and, had not Conduff secured insurance, Ohio Casualty would have been liable

for the full extent of its policy. *Vogel v. Northern Assurance Co.*, 219 F.2d 409 (3d Cir. 1955); *Johnson v. Fidelity & Guar. Co.*, 245 S.C. 205, 140 S.E.2d 153 (1965). The argument of Ohio Casualty proposes many hypotheticals and would have us ignore the existence of the two policies, both of which were valid and would have been liable to the extent of their limits for the full amount of the loss.

 The problem presented entails the interpretation of the pertinent insurance contract clauses in the light of the legal relationships, rather than the issue of who would bear the loss by virtue of the legal relationships between the vendor, the vendee, and the assignee. The policies insured against the same risk, and the loss payee was the same in both policies. *See* 6 J. Appleman, *Insurance Law and Practice* §§ 3901–03, 3905, 3907–09 (rev. 1972).

WHEN TWO INSURANCE POLICIES ARE ACQUIRED TO COVER THE SAME RISK AND LOSS PAYEE, AND LOSS OCCURS, SHOULD EACH CONTRIBUTE PROPORTIONATELY TO THE LOSS?

Ohio Casualty asserts that (1) insurance contracts are personal contracts, (2) its policy does not name Conduff, the vendee's grantee, and (3) its policy was solely for the benefit of the contract vendor and cannot be claimed to be for the benefit of Conduff. Ohio Casualty argues that the interests insured are different, that therefore Conduff's insurance with Reliance does not fall within the "other insurance" requirement of the real estate sale contract, and to force Ohio Casualty to contribute to Conduff's loss would force it to pay on an interest it did not insure.

We note that the clause in question does not take the approach of the usual "other insurance" clause. Here, the clause does not forbid the obtaining of other insurance. The clause acknowledges that other insurance may be secured and provides that if other insurance is secured, then all policies insuring the same interest and risk will share any loss pro rata. It was said in *Dubuque Fire & Marine Ins.*

*Co. v. Reynolds Co.*, 128 F.2d 665, 666 (5th Cir. 1942), *cert. denied*, 317 U.S. 657, 87 L. Ed. 529, 63 S. Ct. 56 (1942):

Clauses forbidding other concurrent insurance are not uncommon in fire insurance policies; and the validity of the "other insurance" provision of the Texas standard form policy is not questioned. Such provisions must be construed, interpreted, and applied according to their terms and obvious import. The well–known and evident purpose of such "other insurance" conditions in policies is to avoid and guard against the moral hazards and attendant temptations to fraud which might be reasonably expected to arise out of the existence of undisclosed concurrent policies of insurance having identity of scope and of subject matter. The thing sought to be prevented is double, concurrent, or over–insurance upon the same property, at the same time, and against the same risk—a situation in which a fire might be profitable to the insured.

This observation is concerned with a threat that is accepted by the clauses before us. Our concern is the interpretation of those clauses, not the validity of the policies secured.

█ The primary risk of loss was that of the contract vendor. The vendor, the vendee, and the vendee's grantee all had distinct insurable interests. *Langdon v. Cambridge Mut. Fire Ins. Co.*, 484 S.W.2d 353 (Tenn. 1972). Conduff, the vendee's grantee, not only had an insurable interest, but also the responsibility to provide coverage for the vendor's interest. The risk of loss by the vendor, whose equity in the property was substantial, was foreseen and provided for in both the Ohio Casualty and the Reliance policies, and both policies insured against loss "upon the property described." These policies are identical in this aspect, and both named Eleanor V. Kirkland as vendor. The "other" policy must insure the same property and the same interest against the same risk for an "other insurance" provision to require contribution on a pro rata basis. *See Turk v. Newark Fire Ins. Co.*, 4 F.2d 142 (E.D. Pa. 1925), *aff'd*, 6 F.2d 533 (3d Cir. 1925); *Burns v. Employers' Liability Assurance Corp.*, 205 Pa. Super. 389, 209 A.2d 27 (1965), 44 Am. Jur. 2d *Insurance* §§ 1808, 1809 (1969); 1 R. Anderson,

*Couch Cyclopedia of Insurance Law* §§ 37:1384, 37:1394 (2d ed. 1962).

Here, the same property was insured in both policies, the loss payee was the same in both, and fire was a risk protected against in both. *See Nationwide Mut. Fire Ins. Co. v. Wilborn,* 291 Ala. 193, 279 So. 2d 460, 466 (1973); *Insurance Co. of North America v. Nicholas,* 259 Ark. 390, 533 S.W.2d 204, 206 (1976). We can best determine the meaning of the "other insurance" clause, when considered in the Ohio Casualty policy, from its specific wording. The terms of the clause do not make either policy void or voidable if other insurance has been procured. The clause only provides that if other insurance covers the vendor's interest, then the loss shall be borne proportionally by the two insurers. Under these circumstances, the loss must be prorated between the two insurers based upon the relationship that the amounts insured under the two policies bears to the amount of the loss. Here, the Reliance policy provided $19,000 in coverage, and the Ohio Casualty policy was for $22,000.

The trial court apportioned the loss of $19,950 (less than the balance owed the vendor Kirkland and therefore due her in toto) on the basis of 19/41 to be paid by Reliance and 22/41 to be paid by Ohio Casualty. This was correct.

■ The two companies both received premiums to insure the risk against loss the vendor Kirkland would suffer if the premises were damaged by fire. It would not be equitable to release Ohio Casualty from responsibility for the loss it would otherwise have to honor in full, thus granting it a windfall, when it had accepted premiums based upon the total exposure to loss. 6 J. Appleman, *Insurance Law and Practice* §§ 3902, 3905 (rev. 1972).

■ We are cited to *Twin City Fire Ins. Co. v. Walter B. Hannah, Inc.,* 444 S.W.2d 131 (Ky. 1969), as controlling. In that case one Kinker insured his house with Company A, with himself named as loss payee. Kinker then deeded to Hannah, who assumed Kinker's mortgage. Hannah then entered into a real estate contract with Dunaway, who

acquired insurance with Company B naming Hannah as the loss payee pursuant to the contract. Thus, while the property was insured against the risk of loss by fire, the interests protected were not the same and the court held that Company B was required to pay the face of its policy first to the extent of the debt owed to Hannah, and then any balance remaining on the face of the policy to be paid to Dunaway. The court concluded that where insurance covers only the risk of a particular party and loss occurs, that the insurer is liable only for the risk insured. The opinion points out that the contract between Hannah and Dunaway did not require Dunaway to keep the property insured for the benefit of Hannah, but that had such been the case "the effect as between them might have been such as to render nugatory any right of subrogation on the part of the insurer." *Twin City Fire Ins. Co. v. Walter B. Hannah, Inc., supra* at 135. These words are applicable here as the effect of the relationships and the policy clauses distinguishes *Twin City Fire Ins. Co. v. Walter B. Hannah, Inc., supra*, from the case before us and renders nugatory any right of subrogation. As noted in *Home Ins. Co. v. Minneapolis, St. P. & S.S.M. Ry.*, 71 Minn. 296, 74 N.W. 140 (1898), the policies are to indemnify against loss, and insurers covering the same risk are not entitled to subrogation against other insurers.

The same interest would not be insured under the two policies if the vendor was the loss payee under one and the vendee or assignee the loss payee under the other. *See Tri–State Mut. Grain Dealers Fire Ins. Co. v. Morris*, 268 F.2d 956 (9th Cir. 1959). Here, the vendor was the only party to be paid under the terms of the policies and the circumstances. The vendor could apply the proceeds to the restoration of the property for the protection of his security. *See* 77 Am. Jur. 2d *Vendor and Purchaser* § 372 (1975). The vendee Schwab could not claim any payment under the Reliance policy which was payable first to Kirkland and then to Conduff. The vendee–assignee Conduff could not claim payment under the Ohio Casualty

policy, which was payable first to Kirkland and then to Schwab. Ohio Casualty would have us read the pro rata clauses so narrowly that they would only apply if there was an identity not only of the loss payee under the clauses, but also of the secondary beneficiaries. We disagree with this argument and hold that the right to prorate extends to all policies covering the same property, risk and interest. *See Employers' Fire Ins. Co. v. British America Assurance Co.*, 259 N.C. 485, 131 S.E.2d 36 (1963); *Federal Land Bank v. Globe & Rutgers Fire Ins. Co.*, 187 N.C. 97, 121 S.E. 37 (1924). The requirement that there be an identity of risk does not mean that the total coverage under both policies be the same, but only that with respect to the harm suffered there be coverage under both policies. 1 R. Anderson, *Couch Cyclopedia of Insurance Law* § 62:93 (2d ed. 1966).

It is argued that Ohio Casualty has the right to step into Kirkland's shoes and recover over against the vendee's assignee, who is receiving a benefit from the payment. This argument makes an incorrect assumption that Conduff is receiving a benefit from the transaction. Payment of a pro rata share to the loss payee Kirkland will not benefit Conduff, but will discharge Ohio Casualty's obligation to Kirkland. Conduff has a damaged property and will be restored to his former position depending upon the terms of the real estate contracts involved, and not upon the terms of these insurance contracts.

█ Insurance policies are to be construed against the insurer that drafted the policy. *Indiana Lumbermen's Mut. Ins. Co. v. Fair,* 109 F.2d 607 (5th Cir. 1940). They are to be construed reasonably and in accord with the evident intent of the parties. *Mountain Timber Co. v. Lumber Ins. Co.,* 99 Wash. 243, 169 P. 591 (1917). The wording of the clause would not put an insured, a loss payee, or any third party on notice that the insurer would expect to be released from liability if other insurance exists. The clause does not make that proviso. The insurer is receiving all it asked for when the loss "on the property" is prorated.

It was held in *Kent v. Insurance Co. of North America,* 189 Neb. 769, 776, 205 N.W.2d 532, 537 (1973), that

where two fire insurance policies issued to a common insured each contain prohibitions against other insurance and a pro rating clause, but no express provision voiding the policy for a violation of the prohibition nor suspending the coverage during the time of violation, both policies remain in force and the pro rating clauses apply to any covered loss.

The holding in *Kent v. Insurance Co. of North America, supra,* involved clauses similar in substance to the clauses before us. The result reached in that case requiring apportionment is even more appropriate here since neither of the policies before us contained provisions prohibiting other insurance. The clauses incorporated in both the Ohio Casualty and the Reliance policies avoid the evil of excessive coverage and anticipate a fair resolution of the problem when the eventuality arises.

The judgment is affirmed.

FARRIS, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied January 26, 1978.

Review denied by Supreme Court June 16, 1978.