CHEMICAL APPLICATIONS
COMPANY, INC., Plaintiff,

v.

The HOME INDEMNITY COMPANY,
Defendant.

Civ. A. No. 73–248–G.

United States District Court,
D. Massachusetts.

Jan. 27, 1977.

Richard A. Dempsey, Glynn & Dempsey, Boston, Mass., for plaintiff.

Robert W. Cornell, Cornell & Gollub, Boston, Mass., for defendant.

## OPINION

ALDRICH,[*] Senior Circuit Judge.

■ This is a diversity action by an insured under a liability policy[1] to recover its costs in cleaning up an oil spill in navigable waters for which it was responsible, without regard to fault, under 33 U.S.C § 1321 (Supp. V, 1975), notably subsection (f)(2), ". . . shall be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil [from the water and shore line] by the United States . . .."

The facts were stipulated,[2] and so, apparently, is the correctness of plaintiff's contention that such loss constitutes "property damage" within the terms of the policy. There is no contrary contention in defendant's brief, and I so find, given the general purpose of the policy and the basic rule that terms are to be construed in favor of the insured. *Transamerica Ins. Co. v. Norfolk & Dedham Mut. Fire Ins. Co.*, 1972, 361 Mass. 144, 147, 279 N.E.2d 686. The statutory liability is in no real sense a penalty, but is precisely measured in terms of the damage caused by the spill.

The only asserted defense is defendant's complaint that plaintiff, who was qualified to do so, did oil removal and cleanup work itself instead of permitting the government to have it done by others and bring suit. Plaintiff's costs, $31,619, which are just within the policy limit, are stipulated. It is further agreed that this figure includes nothing for overhead or profit, and that it was apparent at all times that, if others did the work, the charges against plaintiff would have substantially exceeded the policy limit.

■ Defendant relies on three policy "conditions." The first is easily disposed of. Paragraph 4(a) provides,

"The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy."

In terms, and concept, this imposes a duty on plaintiff to take steps to prevent further injury—to correct the fault—not to repair or restore what has already occurred. If the insured had to repair at its own expense the damage that had already occurred, the policy would be meaningless.

More complicated, but I hold equally meritless on the facts in this case, is defendant's invocation of two other policy provisions.

4(c) "The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident."

5. "No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

In connection with these provisions I note paragraph 4(b),

"If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Strictly, this last is where the case begins. Plaintiff did notify defendant of the emer-

---

[*] Hon. BAILEY ALDRICH, Senior Circuit Judge sitting as a U.S. District Judge by designation.

1. "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage."

2. The facts are more complex than are recited herein, but further details are irrelevant.

gency. It also asked defendant to advance funds for it to do the work itself, which, because of the magnitude and its own limited resources, it would not be able to complete without financial help. Defendant made no response. In light of heavy government and public pressure to attack the spill promptly, plaintiff went to work as fast as its resources permitted. Defendant continued to make no response. Not until a month after the accident did it state its position—that not only would it refuse to advance funds (a matter plaintiff does not now press), but that, because of the aforesaid policy provisions, it would deny all liability for any work that plaintiff did itself. By that time plaintiff's resources were sufficiently drained that it could not proceed with the work fast enough to satisfy the government, and, although plaintiff continued to do some of the work, the government employed third parties to do the balance. The cost of the latter is not involved in this action.

■ The combined effect of the policy provisions is that the insurer's liability is conditioned on an event—judgment or settlement—over the occurrence of which it has retained, vis-a-vis the insured, full control. If the insurer's promise is to be of practical value, however, an obligation of good faith and reasonableness in the exercise of its rights over the occurrence of the condition must be understood. "Although [the policy] language leaves the matter of settlement entirely to the insurer's discretion, its privilege in this respect imports a reciprocal obligation for its exercise." *Murach v. Massachusetts Bonding & Ins. Co.*, 1959, 339 Mass. 184, 186, 158 N.E.2d 338, 340. Thus, an insurer who refuses to defend a suit at all may not assert that the insured's reasonable settlement was unau-

thorized, *Berke Moore Co. v. Lumbermans Mut. Cas. Co.*, 1962, 345 Mass. 66, 185 N.E.2d 637, and an insurer who unreasonably refuses to settle a claim, to the prejudice of the insured's interest in the excess, is liable in full, even beyond the policy limits, for the consequences of its unreasonable conduct, *see Murach v. Massachusetts Bonding & Ins. Co.*, ante.

■ Applying the principle of the necessity of good faith and reasonableness, I find that in this case defendant may not deny liability. From the beginning, plaintiff was in a dilemma. The advance cost figures showed that if it did no work itself, the government costs would considerably exceed the policy limit. For plaintiff to do nothing, and surrender all control to defendant, who, in turn, would do nothing, would inevitably subject plaintiff to unrecoverable charges. The insurer, under the circumstances, was bound to agree to reasonable action.[3] Plaintiff's proposal to perform cleanup work itself at cost could not do other than benefit the insurer, since the total cost of the cleanup was thereby minimized. Indeed, I find that, at least in part, defendant's delay in notifying plaintiff of its disclaimer for the cost of work performed by plaintiff, was based on conscious realization that the more work plaintiff did, the cheaper it might be for defendant itself in the long run, even if it ultimately had to pay the cost thereof, a matter which it could still contest. *Cf. Jenkins v. General Accident Fire & Life Assurance Corp.*, 1965, 349 Mass. 699, 702, 212 N.E.2d 464.

In view of plaintiff's need to respond to the emergency, defendant had an obligation to assent to the plaintiff's proposal and treat the expenses incurred by plaintiff in the same manner as those charged by the government for work done by others.[4] It

3. I express no opinion as to plaintiff's ambitious, and now abandoned claim that the insurer should have made an advance payment to facilitate the work. Nor need I decide whether matters other than the insured's interest in protecting itself from liability in excess of the policy limits, such as a desire, in this emergency, to protect its goodwill and reputation, might also provide justification for it to call

upon the insurer to enter into some "agreement" under the final clause of condition 5, ante.

4. Defendant could, of course, condition its consent to plaintiff's doing the work as being without prejudice to any substantive defense defendant might have, such as the loss not being within the policy at all.

cannot now invoke its own failure to give this assent in order to avoid liability. There was, of course, a burden on the insured to overcome the policy absolutes, but in the case at bar this burden was more than met. Plaintiff could not be obliged to play fast and lose.

Judgment for plaintiff in the amount of $31,619 with interest from the date of the writ.