OPINION OF THE COURT
Rudolph U. Johnson, J.
Plaintiff, William A. Evans, seeks summary judgment against defendant, Aetna Casualty & Surety Company (Aetna), for the relief demanded in the complaint.
This matter comes before this court upon stipulated facts after a previous denial at Special Term on May 21, 1980 by Honorable Henry L. Gossel upon finding the existence of various factual issues.
It is now stipulated that the plaintiff operated a wholesale and retail gasoline facility located in the Town of Evans, New York, having a total storage capacity of
251.000 gallons.
Sometime during the early morning hours of February 12, 1979, vandals broke a lock and opened a valve on a
20.000 gallon above-ground storage tank permitting the discharge of some 18,000 gallons of gasoline onto the surrounding ground, and following natural drainage patterns ultimately flowed into Big Sister Creek which in turn empties into Lake Erie.
At the time of this incident, plaintiff was insured by Aetna under a comprehensive general liability policy which provided coverage for all sums that the plaintiff *711 became legally obligated to pay for damage to property caused by any occurrence to which this insurance applied.
On the morning of February 12, 1979, the plaintiff met with a representative of the New York State Department of Transportation who stated that his agency was charged with the enforcement of the spill cleanup; that the plaintiff had the absolute obligation to immediately undertake spill cleanup in a manner acceptable to representatives of the New York State Department of Transportation and the Department of Environmental Conservation; that, in the event of plaintiff’s failure to take such steps, the Department of Transportation would hire competent personnel to undertake the cleanup operation and thereafter bill plaintiff for the full cost thereof; and that the plaintiff would also be subject to additional penalties although a good faith effort to clean up the spill would be taken into consideration.
Plaintiff, thus, believing that he was “strictly liable” for the gasoline discharge and its cleanup, hired the Elmwood Tank Cleaning Corporation which immediately undertook the cleanup operation and subsequently billed plaintiff a sum totaling $29,465.54.
On the morning of the spill, plaintiff contacted his insurance broker and instructed him to advise his insurance carrier of the petroleum spill. Thereafter, plaintiff made several unsuccessful efforts to involve Aetna in negotiations with Elmwood. On March 5, 1979, Aetna denied coverage for the cleanup work claiming that property damage arising from the discharge or escape of pollutants into or upon land were excluded from coverage unless “sudden or accidental” (Aetna policy exclusion F).
This court is thus asked to decide whether the plaintiff insured was strictly responsible to clean up and remove the gasoline spill and for all resulting property damages and, if so, was the spill so “sudden and accidental” as to avoid the policy exclusion.
Plaintiff contends that its responsibility is mandated under recently enacted article 12 of the Navigation Law entitled “Oil Spill Prevention, Control and Compensation”, effective April 1, 1978 and which holds strictly *712 liable any person discharging petroleum without regard to fault.
Defendant, however, argues that this statute is limited legislation applicable only to the transfer of petroleum between major petroleum facilities, as defined therein (400,000 gallons and over), and between commercial vessels and major petroleum facilities, and is not controlling over plaintiff’s storage operations.
Defendant seeks, rather, to apply the Environmental Conservation Law which was modeled after the Federal Water Pollution Control Act (US Code, tit 33, § 1251 et seq.) and which provides in pertinent part: “§ 71-1941. Penalties and liability for spills of bulk liquids. 1. Except where the owner *** of one thousand gallons or more, in bulk, of any liquid which, if released, would *** pollute the waters of the state can prove that the entry *** into * * * waters * * * was caused solely by *** (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent *** such owner *** shall be liable”.
Defendant, therefore, argues that as the stipulation of facts concedes the spill was caused by vandals, the plaintiff was not legally responsible and, accordingly, there is no obligation to pay under the policy.
This court cannot agree, but finds that article 12 of the Navigation Law is controlling.
In enacting this statute, the Legislature took particular care to set forth the broad sweep of its legislative intent and purpose. (Navigation Law, §§ 170, 171; see, also, Assembly Introductory Record A 5050 and Senate Introductory Record S 3030.)
In sum, in order to protect New York’s lands and waters and to ensure a clean environment and a healthy economy, this legislation flatly prohibits anyone from discharging petroleum into State waters or onto lands from which it might flow or drain into those waters; holds strictly liable any person who so discharges petroleum; establishes an emergency oil spill network; and creates a multimillion dollar fund permitting, if necessary, the immediate financing of remedial cleanup.
*713 In addition, this legislation, in recognition that major storage facilities hold the potential for a large scale environmental catastrophe, requires the licensing of those facilities subject to certain conditions and regulations and the collection of annual licensing fees based on the number of barrels of petroleum transferred (Navigation Law, § 174). While this provision constitutes an important and major element in reaching this statute’s purpose, we do not believe that it embodies the whole thereof.
Further, this legislation not only amends the Highway and State Finance Laws, but also incorporates the aid of the Department of Environmental Conservation and the Department of Transportation and empowers the Commissioner of the Department of Transportation to employ available equipment from appropriate town, county and State highway departments.
The thrust of this legislation is, therefore, a comprehensive effort to prevent oil spills and, so much as possible, to mitigate environmental damage should a spill occur.
As an operator of petroleum storage facilities, the plaintiff was strictly liable to undertake cleanup efforts and acted responsibly on the morning of February 12, 1979 when he hired Elmwood. Given the nature of this gasoline discharge and its near immediate entry into a large flowing waterway, plaintiff would have been remiss if he had chosen to await cleanup operations by State authorities.
From the facts presented, this court must also conclude that the escape of the gasoline was indeed “sudden and accidental” within the ordinary meaning of those terms and within the relevant context of the insuring policy. (See Allstate Ins. Co. v Klock Oil Co., 73 AD2d 486.)
Because of these findings, the court need not address the other issues presented by counsel.
Accordingly, summary judgment for $29,465.54 with interest thereon from February 12, 1979 is awarded to the plaintiff William A. Evans together with the costs and disbursements of this action.