**COMPASS INSURANCE COMPANY,**
Appellant (Defendant),

v.

**CRAVENS, DARGAN AND COMPANY,**
Appellee (Plaintiff).

No. 87-27.

Supreme Court of Wyoming.

Jan. 13, 1988.

Dennis W. Lancaster of Phillips, Lancaster and Thomas, P.C., Evanston, and Allan L. Larson of Snow, Christensen & Martineau, Salt Lake City, Utah, for appellant.

Timothy O. Beppler of Vehar, Beppler, Jacobson, Lavery & Rose, P.C., Evanston, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a judgment against appellant Compass Insurance Company (Compass) awarding complete reimbursement to appellee Cravens, Dargan and Company (Cravens) for the amount it paid to the State of Wyoming for the clean-up of an oil spill.

We affirm in part and reverse in part.

The issue to be resolved is which of these insurers for the State of Wyoming insured the cost of cleaning up the oil spill.

Sometime after 4:00 p.m. on March 18, 1984, an unknown person entered the Wyoming highway department maintenance yard at Evanston, Wyoming, and opened the valve on an oil storage tank. Surrounding the maintenance yard was a ten-foot high chain link fence with barbed wire on top. Access gates to the maintenance yard were locked after 4:00 p.m. The maintenance yard had never before been vandalized, and the highway department personnel had no reason to believe that it would be vandalized.

When the unlocked oil storage tank valve was opened, approximately 3,000 gallons of road oil valued at $2,337 flowed out of the tank, across the maintenance yard, down a hill, and into a drainage or irrigation ditch, and it was carried by water onto landowners' fields.

Upon discovering the oil spill, the highway department immediately took steps to have the oil spill cleaned up. No formal complaint was ever made against the State of Wyoming by any third party for damage to any property caused by the oil spill. However, the highway department personnel did receive complaints from landowners that a fence was destroyed and fields were rutted during the clean-up process. One landowner also complained that his cows could not drink the polluted stock water. The highway department caused the fence to be replaced, the ruts to be filled with top soil, and water to be hauled to the landowner's stock until the polluted water was clean enough for the stock to drink.

The cost of cleaning up the oil spill on the property owned by the State of Wyo-

ming was $8,821, and the cost of cleaning up the oil spill on the property owned by others was $85,635.

At the time of the oil spill incident, the State of Wyoming had an effective comprehensive liability insurance policy issued by Compass and an effective property insurance policy issued by Cravens. Thereafter, the State of Wyoming made claims against Compass and Cravens for $96,792, which included the costs associated with cleaning up the oil spill and the value of the oil spilled. Cravens ultimately paid the $96,792 claim and accepted a subrogation receipt from the State of Wyoming wherein the State subrogated all its rights, claims, and interest which it might have against any person or corporation liable for the loss and authorized Cravens to sue, compromise, or settle the claim in the name of the State. Compass refused the demand made by Cravens for reimbursement of the $96,792 Cravens had paid to the State of Wyoming. On April 29, 1985, a complaint was filed in the Third Judicial District Court styled "STATE OF WYOMING, Plaintiff, v. COMPASS INSURANCE COMPANY, a New York Corporation, Defendant," alleging that the State of Wyoming was liable for the cost of cleaning up the oil spill and any monetary damages arising therefrom and that, pursuant to the terms of the State's insurance policy with Compass, Compass was obligated to pay for those amounts.

Compass filed its answer alleging that Cravens, and not the State of Wyoming, was the real party in interest and that, pursuant to the terms of the liability policy Compass had issued to the State, it owed no duty or obligation to either the State or Cravens for any expenses, costs, or damages occasioned by the oil spill.

Cross-motions for summary judgment were denied, and the court ordered that the caption of the case be amended to substitute Cravens as the real party in interest in place of the State of Wyoming. On October 9, 1986, a bench trial was held, and, on December 4, 1986, the trial court entered judgment generally in favor of Cravens and against Compass for the sum of $118,-

144.09, which amount represents clean-up costs of $94,455, prejudgment interest of $13,567.88, attorneys fees of $10,000, and costs of $121.21.

Two questions must be answered in order to resolve this case: (1) Does the Compass policy cover the oil spill; and (2) if the Compass policy does cover the oil spill, does Cravens have a right to reimbursement from Compass.

The primary coverage language in the comprehensive liability policy issued by Compass provides in relevant part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * property damage * * * caused by an occurrence * * *."

The Compass policy defines "occurrence" as

"an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured* [.]" (Emphasis added.)

It also defines "property damage" as:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period[.]"

■ We disagree with Compass' assertion that the incident may not be an occurrence. A general finding and judgment carry with them every finding of fact which reasonably and fairly can be drawn from the evidence. *Burk v. Burzynski,* Wyo., 672 P.2d 419 (1983). Our examination of the record reveals that the trial court reasonably and fairly could have drawn from the evidence that one would not expect vandals to climb the ten-foot high chain link fence and open the valve on the oil storage tank.

■ We also disagree with Compass' assertion that there is no evidence of damage to property of third parties. The evidence clearly shows that the oil spill resulted in the contamination of the ditch bank and the fields of landowners adjacent to the highway department maintenance yard and that the costs associated with cleaning up this property amounted to $85,635. The trial court could have reasonably and fairly drawn from the evidence that there was physical injury to, and loss of use of, tangible property; i.e., property damage as defined in the Compass policy.

In *Lansco, Inc. v. Department of Environmental Protection,* 138 N.J.Super. 275, 350 A.2d 520 (1975), aff'd 145 N.J.Super. 433, 368 A.2d 363, 88 A.L.R.3d 172 (1976), the Superior Court of New Jersey decided a case with facts nearly identical to this one. In that case, a person or persons unknown opened the valve on two storage tanks causing some 14,000 gallons of oil to leak from the tanks. The oil flowed into two storm drains which in turn emptied into the Hackensack River. At the time of the incident, Lansco had an effective general comprehensive liability policy with provisions the same or similar to the Compass policy.

The policy held by Lansco, like the Compass policy, defined an "occurrence" as an accident " 'which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " Id. 350 A.2d at 523. The court in *Lansco, Inc. v. Department of Environmental Protection* stated:

" 'Accidental' is defined as happening unexpectedly or by chance; taking place not according to usual course. Webster's New International Dictionary, and Black's Law Dictionary * * *; *Furr v. Metropolitan Life Ins. Co.,* 111 N.J.Super. 596, 600, 270 A.2d 69 (Law Div. 1970); see *Linden Motor Freight Co. v. Travelers Ins. Co.,* 40 N.J. 511, 193 A.2d 217 (1963). Further, under the definition of 'occurrence' contained in the policy, whether the occurrence is accidental must be viewed from the standpoint of the insured, and since the oil spill was neither expected nor intended by Lansco, it follows that the spill was sudden and accidental under the exclusion clause

even if caused by the deliberate act of a third party." Id. 350 A.2d at 524.

That court concluded that coverage under the comprehensive general liability policy extended to statutory liability for damages to the environment. Id. at 524. The insurer was required to reimburse Lansco for its costs to clean up the spill. Id. at 525; see also *Chemical Applications Company, Inc. v. Home Indemnity Company*, 425 F.Supp. 777 (D.Mass.1977).

Compass contends that the intent of its policy is to pay only damages for which the State is legally liable and that the State is not legally liable for the costs of cleaning up the property of a third party because no notice of claim has been filed against the State as required by law.[1] Compass also contends that, in any event, the State cannot be held liable under the Wyoming Governmental Claims Act.[2]

■ There is no question that the highway department had the legal liability to clean up the oil spill. The department of environmental quality, established by the Wyoming Environmental Quality Act,[3] has the obligation to promulgate rules and regulations necessary to prevent, reduce, and eliminate waste. *Tri–State Generation and Transmission Association, Inc. v. Environmental Quality Council*, Wyo., 590 P.2d 1324 (1979). In carrying out this obligation, the department prepared and put into effect Chapter IV, Section 5.c of its Water Quality Rules & Regulations, which provides that a person[4] owning oil which is discharged is responsible for the cleanup of the discharged oil. The act and the rules and regulations promulgated to carry out the purpose of the act make it clear that the State is obligated to pay for these damages without there being a judicial determination of that fact.

Compass contends that no right of subrogation exists in favor of one insurer against another insurer of the same insured. Assuming, arguendo, that Compass is correct, we fail to see how this provides any comfort to Compass. The learned trial judge in his wisdom wisely side-stepped this problem and ordered that the caption of the case be amended, substituting Cravens as the real party in interest in place of the State of Wyoming. This order was in accord with Compass' third defense which alleged that Cravens, not the State of Wyoming, was the real party in interest.

We agree with Compass that Cravens does not have a right of subrogation on the basis of Compass being at fault for the oil spill. Cravens' action, however, is not on the basis of Compass' negligence. To the contrary, the action is for reimbursement on the theory that Compass, rather than Cravens, should have indemnified the State for the clean-up costs.

■ Compass' contention that the State cannot be held liable because it is immune from strict liability by virtue of § 1–39–102(b), W.S.1977, of the Wyoming Governmental Claims Act is without merit in this instance. This subsection provides in part:

"This act does not impose [or] allow the imposition of strict liability *for acts of governmental entities or public employees.*" (Emphasis added.)

There is not a scintilla of evidence in the record indicating that a governmental entity or an employee of the State was in any way responsible for the oil spill. The evidence is that the oil spill was caused by unknown third persons.

Compass' contention that there is no legal liability because no formal claims were filed is also without merit.[5] If the insur-

1. Section 1–39–113, W.S.1977.

2. Sections 1–39–101 through 1–39–120, W.S. 1977.

3. Section 35–11–103(a)(i), W.S.1977.

4. As set out in § 35–11–103(a)(vi), W.S.1977: "'Person' means an individual, partnership, firm, association, joint venture, public or private corporation, trust, estate, commission, board, public or private institution, utility, cooperative, municipality or *any other political subdivision of the state*, or any interstate body or any other legal entity[.]" (Emphasis added.)

5. The limitation language in the Compass policy states:

"The insured shall not, except at his own cost, voluntarily make any payment, assume any

er's promise to pay is to be of any practical value, it must include an obligation of good faith and reasonableness. From the beginning, the highway department was in a dilemma. If it did nothing to clean up the oil spill, the damages would be much greater. The damages would be much greater even if it waited only for determinations as to who was liable and who would direct the cleanup. An oil spill into flowing water, by its nature, requires an immediate clean-up response. That no formal claims were filed is a credit to the highway department's clean-up efforts, not an excuse for Compass to deny coverage. The principles of good faith and reasonableness require the insurer, under these circumstances, to acquiesce to the clean-up efforts. Compass has not pointed to any detriment which it has suffered from the highway department's actions. Compass stipulated to the damage amounts, and the liability is clear. Compass' coverage was not expanded in any way by the highway department's action. Rather, the highway department's actions limited the damages.

Because the Compass policy does cover the oil spill, we reach the second question: Does Cravens have a right to reimbursement from Compass?

Compass argues that Cravens voluntarily indemnified the State for the cost of the cleanup, that Cravens is liable because its policy has a debris removal clause, and that, if Cravens is entitled to contribution from Compass, it should be on the basis of the amount of the coverage provided by each policy. Cravens in turn argues that it was not a volunteer because it wanted to avoid a potential bad faith claim and that, even if the debris removal clause in its policy does apply, it still is not responsible for all the clean-up costs because of the "other insurance," "escape," and "super escape" clauses in its policy.

obligation or incur any expense other than for first aid to others at the time of accident." And:
"No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the

The primary coverage language in the property insurance policy issued by Cravens provides in relevant part:

"Subject to the terms, conditions and exclusions hereinafter contained, this Policy insures all Property (including improvements and betterments) of the Insured * * * against ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE * * *."

The Cravens policy also contains a debris removal clause:

"This Policy also covers, within the sum insured, expenses incurred in the removal of debris of the property covered hereunder which may be destroyed or damaged by a peril insured against."

The Compass policy, in addition to its primary liability coverage language, contains an exclusion for pollution coverage:

"This insurance *does not apply:*

\*      \*      \*      \*      \*      \*

"(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental* [.]" (Emphasis added.)

It also includes an exclusion for damage "to property owned or occupied by or rented to the insured."

To counter Compass' assertion that clean-up costs are "debris removal" costs and not "damages" to property, Cravens contends that the discharged oil caused injury to property and that the amount expended for clean-up costs is the proper measure of damages. We agree with Cravens that the discharged oil caused injury to the property covered by the oil. We also

terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

agree with Cravens and the court in *Lansco, Inc. v. Department of Environmental Protection* that the proper measure of property damage is the cost of cleaning up the oil when there is no residual damage to the property.

General principles of construction will be followed when interpreting conditions of an insurance agreement. *Commercial Union Insurance Company v. Stamper*, Wyo., 732 P.2d 534 (1987). Two basic standards of construction applicable in Wyoming are:

1. " 'Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance. *Miles v. Continental Casualty Company*, Wyo., 386 P.2d 720, 722 [ (1963) ].' " Id. at 539, quoting *McKay v. Equitable Life Assurance Society of United States*, Wyo., 421 P.2d 166, 168 (1966).

2. " 'The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. *Wilson v. Hawkeye Casualty Co.*, [67 Wyo. 141], 215 P.2d [867,] 873–875 [ (1950) ].' " Id. at 539, quoting *McKay v. Equitable Life Assurance Society of United States*, 421 P.2d at 168.

We stated in *Wilson v. Hawkeye Casualty Co.*, 67 Wyo. 141, 215 P.2d 867, 874 (1950), quoting *McGrail v. Equitable Life Assur. Soc. of United States*, 292 N.Y. 419, 55 N.E.2d 483, 486 (1944):

" 'Consistently followed in this State has been the rule that the policy must be construed reasonably and that it must be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties must reasonably have intended by its terms when the policy was written by defendant and accepted by the plaintiff.' "

■ It is clear to this Court that the intent of the Cravens policy is to pay for damage to property of the State and that the intent of the Compass policy is to pay for damage to property of others caused by an incident neither expected nor intended; i.e., an occurrence. The trial court correctly found that Compass had the primary responsibility for the damage to the property of others. We will not now dissect the respective policies in an attempt to determine who wins the battle of the forms with respect to other insurance clauses.

The combination of Compass' refusal to pay a claim for which it was primarily responsible and Cravens' good faith effort to settle the claim with minimal inconvenience to its insured resulted in the inequitable result of Compass paying nothing for a claim covered by its policy.

■ Compass also claims that Cravens acted as a mere volunteer when it paid the State's claim and that, under the holding of *Commercial Union Insurance Company v. Postin*, Wyo., 610 P.2d 984 (1980), Cravens is not entitled to reimbursement from anyone. We disagree that Cravens acted as a mere volunteer. The test for voluntary payment by an insurer was addressed in *Commercial Union Insurance Company v. Postin*, 610 P.2d at 990, wherein the holding in *Wyoming Building & Loan Ass'n v. Mills Const. Co.*, 38 Wyo. 515, 269 P. 45, 60 A.L.R. 418 (1928), was reaffirmed that an insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it is ultimately determined that the insurer's policy did not apply.

The trial court's judgment carries with it the finding that Cravens' payment was " 'in good faith' " and " 'under a reasonable belief that it [was] necessary' " so as to not defeat the right to reimbursement. *Commercial Union Insurance Company v. Postin*, 610 P.2d at 990. However, we cannot ignore the uncontradicted evidence that the discharged oil was also on State property and that the cost of cleaning up the oil on this property was $8,821. The State property is insured by Cravens and excluded from the coverage provided by Compass. Accordingly, we remand to the district court with directions that the judgment entered against Compass be reduced

by $8,821 plus the interest charged thereon.

Affirmed in part and reversed in part.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

It is unusual, but rationally to be recognized, that neither the original litigants nor now the majority opinion and this dissent define the issue of this case in corollary status or by comparable question. Differing from the court in analysis of pleading, policies, and legal principles, I would conclude that the issue is not which of two insurers, one property-damage and the other liability (each insuring some interest of the state of Wyoming), should be liable to indemnify the state for malicious-mischief damage when vandals open the tank valves of a road oil storage facility at a highway department shop, but rather whether the property-damage carrier, after payment and with at least apparent liability on its policy, can secure "reimbursement" by either subrogation or contribution from the liability carrier.

Little benefit will be afforded in writing the standard for this case in argumentation whether the property-damage carrier had a coverage responsibility, since first that fact appears reasonably discernible from the specific terms of the policy, and secondly, it must have been obvious since the carrier paid the claim without ostensible assertion of being a volunteer charity institution as a good samaritan in paying the state of Wyoming the claimed $94,455 even when coincidentally blessed with a policy with a scheduled property value of $341,312,860 and policy limits of $50 million, for physical-damage insurance coverage of state buildings and properties, comparable with the liability carrier's maximum coverage of $500,000 per incident.

Factually and procedurally, this litigation is sufficiently strange so that, at least in contemplation of a standard for future litigation, we could leave its precedential value in a fashion akin to the paraphrased comment as Justice Felix Frankfurter once related in dissent, and I would find here similarly to be perceived, as the flying Dutchman known only as a floating hulk once briefly observed upon the silent sea to surely disappear as having been a temporary mirage in the ocean of law.

Someone vandalized the state highway property in Evanston by opening a valve of a road oil storage tank. With a property-damage carrier, Cravens, and a liability carrier, Compass, the state made claims for the spilled oil clean-up costs on and off the property occupied by the highway department facility and for the oil lost in drainage.

Cravens, the property-damage carrier, with a debris-clean-up provision reasonably defining its liability, paid the clean-up costs less $1,000 deductible, while the liability carrier, Compass, denied any claimed liability to be impressed from negligence of its insured, the state of Wyoming, and consequently declined to pay the state for what the state had collected from Cravens under the property-damage policy. Cravens, as the liability carrier, after taking a subrogation receipt, sued Compass in the name of the state, alleging that their mutual insured, the state, was liable for the clean up based on strict liability and lack of due care and that consequently the state of Wyoming was entitled to repayment of what it had expended, including interest and attorney's fees, which constituted its claim for subrogation after the state had been paid in full for expenditures less property-damage deductible. The only complaint ever filed was in the name of the state of Wyoming against Compass as liability carrier by attorneys for the subrogating property-damage carrier, and in no way included any direct subrogation claims of the property-damage carrier which had made the payment.

The history of the pleadings assumed an interesting metamorphosis in that at a considerably later date, in ruling adversely to the "State's" motion for summary judgment, the trial court, without benefit of motion or request, determined that the obvious real party in interest was Cravens and not the state, and amended, in an order

denying the summary judgment by substituting the additional litigative plaintiffs.[1]

As noted, the complaint was filed pursuant to a subrogation receipt in the name of the state as the designated plaintiff, alleging the liability carrier's legal responsibility and the indemnity obligation of Compass (liability carrier) to the state for the damages sustained by the state and paid to the state less the deductible. Questionably, whether or not the suit was originally filed with approval of the state in the fashion not in evidence, a ratification by both a member of the office and the attorney general himself was subsequently filed to demonstrate the authorization of the law firm actually representing the subrogating insurance company *to proceed in the name of the state of Wyoming.* Nothing was pleaded about the interest of the subrogating carrier, nor was a motion for summary judgment ever made in its name.

The subrogation receipt provided:

### "SUBROGATION RECEIPT

\* \* \* \* \* \*

"In consideration of and to the extent of said payment the undersigned hereby subrogates said Insurance Company, to all of the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above, and authorizes the said Insurance Company to sue, compromise or settle in the undersigned's name or otherwise all such claims and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned, with the same force and effect as if the undersigned executed or endorsed them.

"Warranted no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Insurance Company and the undersigned covenants and agrees to cooperate fully with said Insurance Company in the prosecution of such claims, and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify if the Insurance Company deems such to be necessary but it is understood the undersigned is to be saved harmless from costs in such proceedings.

"[Signed by a representative of the State of Wyoming.]"

In the subsequently entered order denying summary judgment as filed *"by the State of Wyoming,"* (emphasis added) the judge found and determined:

"Thereafter, the Attorney General of the State of Wyoming authorized this action to be filed *in the name of the State of Wyoming* by Cravens, Dargan & Company against the Compass Insurance Company, which is the insurance company which insures the State against personal liability. Obviously, the real party in

---

1. The circumstance of an ex parte amendment of this kind by the court has curious facets, but none more interesting than the result on the demand for attorney's fees included in the original complaint, based upon § 26–15–124, W.S. 1977, which affords a remedy of an insured against his carrier for inopportunely denied payment of insurance benefits. The amount of attorney's fees was stipulated as reasonable, but a logical or a legally justified basis for award in a subrogation case of this kind is absolutely lacking. Although strongly presented in trial, the question of the attorney's fees was not separately presented on appeal, and no further inquiry will be pursued except to reiterate that a basis for the award is not presented in this record. See *F.D. Rich Co., Inc. v. United States for Use of Industrial Lumber Co., Inc.,* 417 U.S.

116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Smith v. Equitable Life Assurance Society,* 614 F.2d 720 (10th Cir.1980); *Downing v. Stiles,* Wyo., 635 P.2d 808 (1981); *State Surety Co. v. Lamb Construction Co.,* Wyo., 625 P.2d 184 (1981). Cf. *Bruegger v. National Old Line Insurance Co.,* 387 F.Supp. 1177 (D.Wyo.1975), modified on other grounds, 529 F.2d 869 (10th Cir.1976). In result, this was a subrogation and carrier's award of attorney's fees under a first-party insured's benefit statute.

It would be a well-reasoned assessment that judgment was entered in behalf of a litigant which was never pleaded as a party on a claim that it never made by the nominal plaintiff as its insured suing itself with attorney's fees awarded without any statutory or legal justification.

interest in this case is Cravens, Dargan & Company, not the State of Wyoming. *"Cravens, Dargan & Company* seeks to recover from Compass the money which Cravens has paid to the State of Wyoming. Cravens contends that the State of Wyoming was 'legally obligated to pay as damages' costs of cleaning up the oil (damage). Cravens seeks reimbursement from Compass of all monies which it paid, which includes the cost of the oil which was lost, the cost of cleaning up property belonging to the State of Wyoming and the cost of cleaning up property belonging to private citizens.

*"Cravens has moved for summary judgment.* Clearly, Cravens is not entitled to judgment against Compass for the sums paid for lost oil or damage to property belonging to the State of Wyoming. At most, Cravens would be entitled to reimbursement for the sums paid in discharge of liability of the State of Wyoming for damages to the property of others.

"Unfortunately, Cravens has not established:

"a) As a matter of law, the absolute liability of the State of Wyoming for the oil spill which occurred; or

"b) That the State of Wyoming did not enjoy immunity.

"Furthermore, if the State is not immune from suit, and if there is no absolute liability, there remain questions of fact concerning whether or not the State was negligent.

"THEREFORE, IT IS ORDERED:

"1. The caption of this case is amended to substitute the real party in interest in place of the *State of Wyoming.* The caption shall now read *Cravens, Dargan & Company,* a corporation, vs. Compass Insurance Company, a New York Corporation.

"2. The Motions for Summary Judgment are denied." (Emphasis added.) (Signed by the district judge and entered May 15, 1986.)[2]

Intrinsic to the evidentiary status of this case is a total absence of any evidence in defined dollars as to damages sustained by any third parties. Actually, the record reflects that oil ran out onto the property of two ranchers, but no defined dollar amount was included to reflect the costs incurred separately for the clean up on their property or whether the substantial costs, which were for diking and retention and reclamation of the oil, could be considered to have occurred on property of the state of Wyoming through its public waterways or, in fact, may have occurred on private ditches of these or other adjoining landowners. Two maps which were referenced in the testimony which would have afforded some geographical description of what occurred (the first being a chalkboard exhibit at trial which was not marked and introduced, and the second being an earlier attachment to the Department of Environmental Quality report as the report was then introduced without attachment), are not included in the present record.

---

**2.** Two interesting facets of this order deserve note in this record. First, since Cravens was never a party it had never moved for summary judgment, and secondly, a $1,000 deductible, which would have created and maintained a proper real-party-in-interest relationship with the state of Wyoming, *Gardner v. Walker,* Wyo., 373 P.2d 598 (1962), seemingly disappeared by disingenuous disregard of the litigant and the court. Purists in pleading would find all of this interesting, since an earlier stipulation entitled "The State of Wyoming v. Compass Insurance Company" reflected the reasonable clean-up cost and that no claim has ever been made against the highway department or the state of Wyoming by any third party for damages to the property caused by the oil spill; that Cravens had a $50 million policy and had paid the clean-

up costs; and that "Cravens by letter dated July 10 and September 20, 1984, and March 8, 1985, * * * made demand upon Compass for repayment of all or a portion of those sums paid by Cravens to the State of Wyoming." The fiduciary responsibility of a subrogating insurance carrier for the deductible also seemingly evaporated. Compass had earlier raised the real-party-in-interest defense which was obviated by the action of the court in summary-judgment order amendment by unrequested substitution of parties when in the process the highway department's $1,000 deductible got lost. The existence of a *liability policy* deductible was not addressed in this record, so if Cravens was entitled to recover, why the state was not repaid the deductible is a total mystery as at least a sail upon that silent sea.

Succinctly then, the case in totality is an inquiry as to whether or not a liable property-damage carrier, after policy payment, can either get subrogation or contribution from a liability carrier arising from the contended negligence or duty-derived strict liability of the mutually insured. I do not even get to the questions of whether or not the Compass policy covered the oil spill, whether strict liability existed, or whether the state is entitled under these circumstances to indemnity, since the case dispositively should invoke a subrogation question between two carriers for the same insured. Although there was obvious damage to the property of the two ranchers, Crompton and Lowham, whether the particular clean-up costs and renovation damages on their particular property was the total amount of the claimed off-premises clean up of $85,-635 or some fraction of that amount, was simply and totally undefined and unproven in the trial record and case pleadings. No one ever plead that the only two mentioned or any other linked parties sustained *definable damages* in the case facts and liability-policy provisions after the property-damage carrier reimbursed the state for all clean-up costs as claimed and paid within its malicious-mischief/debris-clean-up insurance policy clauses.

The totality of my difference with the majority in this case is in contemplation of their statement:

> "We agree with Compass that Cravens does not have a right of subrogation on the basis of Compass being at fault for the oil spill. Cravens' action, however, is not on the basis of Compass' negligence. To the contrary, the action is for reimbursement on the theory that Compass, rather than Cravens, should have indemnified the State for the clean-up costs."

Reluctantly, I conclude that this critique of the case simply does not make sense. Not only does it not make any sense, but it was not the critical basis upon which the litigation was pursued by the parties in trial. The complaint, which is the only complaint ever filed, albeit in the name of the state of Wyoming, alleged against state of Wyoming, inter alia:

"2.5 Under WS § 35–11–101, et seq. Plaintiff State of Wyoming was strictly liable because of the extreme and permanent damage such pollution can and does cause to the land and property of others for both the costs of cleaning up the oil spill and any monetary damages arising therefrom; and Plaintiff State of Wyoming was therefore legally obligated to pay such damages within the terms of its insurance policy with Defendant Compass.

"2.6 Plaintiff State of Wyoming was strictly liable to the adjoining property owners under the doctrine of abnormally dangerous activities for both the costs of cleaning up the oil spill and any monetary damages arising therefrom; and Plaintiff State of Wyoming was therefore legally obligated to pay such damages within the terms of its insurance policy with Defendant Compass.

"2.7 Plaintiff State of Wyoming was strictly liable to the adjoining landowners under the doctrines of public and private nuisance for both the costs of cleaning up the oil spill and any monetary damages arising therefrom; and Plaintiff State of Wyoming was therefore legally obligated to pay such damages within the terms of its insurance contract with Defendant Compass.

"2.8 Based on allegations that the Plaintiff State of Wyoming failed to exercise due care in failing to take adequate safety precautions to prevent the subject oil spill, Plaintiff State of Wyoming was liable to adjoining landowners for both the costs of cleaning up the oil spill and any monetary damages arising therefrom; and Plaintiff State of Wyoming was therefore legally obligated to pay for such damages within the terms of its insurance contract with Defendant Compass.

"2.9 Under the terms of its insurance policy with Plaintiff State of Wyoming, Defendant Compass is obligated to pay Plaintiff State of Wyoming for both the amounts Plaintiff State of Wyoming expended in cleaning up the oil spill and the

amount of any monetary damages arising therefrom.

\* \* \* \* \* \*

"WHEREFORE, Plaintiff State of Wyoming prays for judgment against Defendant Compass as follows:

"1. That Defendant Compass be held liable to Plaintiff State of Wyoming for damages in an amount to be proven at trial;

"2. That Defendant Compass be held liable to Plaintiff State of Wyoming for Plaintiff's costs and disbursements incurred herein \* \* \*."

In its brief filed in this court, appellant enunciates the issues as:

"I. CAN AN INSURANCE COMPANY PROVIDING PROPERTY INSURANCE BRING SUIT AGAINST ITS OWN INSURED, OR ITS OWN INSURED'S LIABILITY INSURER, FOR THE RECOVERY OF SUMS IT PAID OUT UNDER ITS POLICY?

"II. CAN A LIABILITY INSURER BE LIABLE WHERE ITS INSURED WOULD NOT BE?

"III. ASSUMING BOTH POLICIES COVERED THE LOSS, IS CRAVENS ENTITLED TO CONTRIBUTION, AND IF SO, HOW SHALL THE CONTRIBUTION BE APPORTIONED?"

Appellee states the issues as:

"1. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT'S POLICY OF LIABILITY INSURANCE COVERED AND THAT APPELLANT WAS RESPONSIBLE FOR THE COSTS INCURRED BY THE WYOMING HIGHWAY DEPARTMENT TO CLEAN UP AN OIL SPILL FOR WHICH IT WAS STRICTLY LIABLE UNDER WYOMING LAW?

"2. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT APPELLEE, THE STATE OF WYOMING'S PROPERTY INSURER, WAS ONLY RESPONSIBLE FOR THE VALUE OF THE OIL WHICH WAS LOST AS A RESULT OF THE OIL SPILL?

"3. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT AP-PELLEE WAS ENTITLED TO REIMBURSEMENT FROM APPELLANT FOR SUMS APPELLEE PAID TO THE STATE OF WYOMING ON ACCOUNT OF THE POLLUTION CLEAN-UP COSTS INCURRED BY THE WYOMING HIGHWAY DEPARTMENT?",

and in argument in the brief:

"Generally, Appellee contends that the trial court correctly determined that Appellant's liability insurance policy covered the pollution clean-up costs in question; that only the value of the oil lost, as a result of the oil spill, was covered by Appellee's property insurance policy; and that under these circumstances Appellee was entitled to be reimbursed by Appellant for sums Appellee had paid the State of Wyoming on account of the pollution clean-up."

Appellee then further contends that the *other insurance clause* in its policy was a super-escape clause and as a result

" \* \* \* Appellee was at most a secondary insurance provider and the effect of the respective policies was to create liability solely on the part of Appellant. Appellant issued the insurance coverage which was primarily applicable to the oil-spill incident. As a result, appellee was entitled to proceed in this action to seek reimbursement from appellant for the sums it had paid to the state on account of the pollution clean-up costs incurred [under its policy]."

In resulting memoranda briefing and extended argument, Cravens continued to allege a legal liability of the state of Wyoming, the indemnity responsibility of Compass, and the resulting right of Cravens to be subrogated and repaid based on a primary responsibility of the liability carrier to repay the property-damage carrier.

The principal issue of this case is the appearance of creating a novel and completely unaccepted rule that a property-damage carrier which pays for the physical damage to the insured's property can effectively allege negligence of its insured in order to subrogate against a liability carrier. It is pointless to argue that Cravens did not have original liability, because ei-

ther they had liability when they made the payment under their issued insurance coverage, or they volunteered by payment in order to avoid a contested or contended liability which in itself does not afford any differing status for its subrogation posture. In this latter regard, *Commercial Union Insurance Co. v. Postin,* Wyo., 610 P.2d 984 (1980), is directly in point and is now apparently ignored by this court. An excellent synopsis of the law of subrogation of volunteered payment is found in *Frago v. Sage,* Mo.App., 737 S.W.2d 482 (1987).

In its misapprehension of the litigative issue, I would find in logical perspective no significance in this court's decision except that one insurance company won and the other lost in this particularly convoluted and inexplicable circumstance. To the contrary, if the rule of the case is considered to be its real issue of the right of subrogation of a property-damage carrier against its mutual insured's liability carrier, then we find ourselves not only in the Sargasso Sea attendant to the hulk of Frankfurter's perception, but flailing water by the teaspoonful when faced with a typhoon by challenging the weight of general law denying a right of subrogation. Illustrative only of the multitude of authorities that might be noted are *Aetna Insurance Co. v. Craftwall of Idaho, Inc.,* 757 F.2d 1030 (9th Cir.1985); *United States v. St. Bernard Parish,* 756 F.2d 1116 (5th Cir.1985), cert. denied 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986); *Frank Briscoe Co. v. Georgia Sprinkler Co., Inc.,* 713 F.2d 1500 (11th Cir.1983); *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir.1971), cert. denied sub nom. *Chevron Oil Co. v. Royal Ins. Co.,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *Transamerica Insurance Co. v. Gage Plumbing & Heating Co.,* 433 F.2d 1051 (10th Cir.1970); *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.,* 418 F.Supp. 56 (N.D.Tex. 1976); *Builders & Manufacturers Mutual Casualty Co. v. Preferred Automobile Ins. Co.,* 118 F.2d 118 (6th Cir.1941); *Moring v. State Farm Mutual Automobile Insurance Co.,* Ala., 426 So.2d 810 (1982); *Graham v. Rockman,* Alaska, 504 P.2d

1351 (1972); *Pendlebury v. Western Casualty & Surety Co.,* 89 Idaho 456, 406 P.2d 129 (1965); *Truck Insurance Exchange v. Transport Indemnity Co.,* 180 Mont. 419, 591 P.2d 188 (1979); *Home Insurance Co. v. Pinski Brothers, Inc.,* 160 Mont. 219, 500 P.2d 945 (1972); *Reeder v. Reeder,* 217 Neb. 120, 348 N.W.2d 832 (1984); *Manzo v. City of Plainfield,* 59 N.J. 30, 279 A.2d 706 (1971); *A & B Auto Stores of Jones St., Inc. v. City of Newark,* 59 N.J. 5, 279 A.2d 693 (1971); *Chenoweth Motor Co. v. Cotton,* 2 Ohio Misc. 123, 207 N.E.2d 412 (1965); *Board of Education of Jordan School District v. Hales,* Utah, 566 P.2d 1246 (1977); *Kirkland v. Ohio Casualty Ins.,* 18 Wash.App. 538, 569 P.2d 1218 (1977); *Miller v. Kujak,* 4 Wis.2d 80, 90 N.W.2d 137 (1958); Appleman, Insurance Law and Practice, § 1164; Couch on Insurance 2d. It is axiomatic that:

"No right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." 16 Couch on Insurance 2d § 61:136 at 195, also quoted in *Moring v. State Farm Mutual Automobile Insurance Company,* supra.

Of current interest as a subrogation issue involving law firms and legal fees, see *St. Paul Fire & Marine Insurance Co. v. Perl,* Minn., 415 N.W.2d 663 (1987).

The judgment in favor of appellee subrogating insurance carrier, Cravens, provided:

"THIS MATTER having come on regularly for a trial before the Court, sitting without a jury, * * * and the Court being fully advised in the premises.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff shall be, and hereby is, awarded judgment in its favor and against Defendant in the sum of Ninety-Four Thousand Four Hundred Fifty–Five Dollars ($94,455.00), together with interest thereon at the rate of seven percent (7%) per annum from September 20, 1984 to the date of trial in the amount of Thirteen Thousand Five Hundred Sixty-

Seven Dollars and Eighty–Eight Cents ($13,567.88), together with attorneys fees in the amount of Ten Thousand Dollars ($10,000.00), and together with costs in the amount of One Hundred Twenty–One Dollars and Twenty–One Cents ($121.21), for a total judgment in favor of Plaintiff and against Defendant in the sum of One Hundred Eighteen Thousand One Hundred Forty–Four Dollars and Nine Cents ($118,144.09), together with interest thereon at the rate of ten percent (10%) per annum from October 9, 1986 until paid in full."

The only further learning we are afforded from the record as to the basis of decision was the statement of the trial court at the conclusion of oral argument, wherein he said:

"It's the order of this Court and the judgment of this Court that Compass shall be responsible for the sum of— Strike that. That Cravens shall be responsible for the sum of $2,237 and Compass shall be responsible for the sum of—the difference between $2,237, the cost of the oil, and $96,792."

Surely an emphatic and careful examination of the record would reveal that the case is a simple subrogation proceeding where, after the property-damage carrier has paid under its policy, it attempts to subrogate in the name of the state against the state to reach the state liability carrier. As demonstrable of the failure of issue

analysis, the trial court judgment is primary evidence when the court even gave judgment against the liability carrier in favor of the property-damage carrier for clean up on the property of the insured. It was apparent that the basis of the trial court's decision was on a subrogation right to affix total liability on the liability carrier, even if it involved clean up on the property of the insured where no possibility of existence of liability could be inferred. The majority conversely seem to determine that the issue is liability of the state for oil spill without any understanding of insurance coverage in stating in conclusion what it had avoided in logical argument:

"* * * The trial court correctly found that Compass had the primary responsibility for the damage to the property of others. We will not now dissect the respective policies in an attempt to determine who wins the battle of the forms with respect to other insurance clauses." [3]

The construction of the policies by this court simply has no basis in either subrogation law or the policy terminology. *Farmers Insurance Exchange v. Fidelity Casualty Company of New York*, Wyo., 374 P.2d 754 (1962). Cravens undertook certain liabilities for property ownership including damage, malicious mischief and clean up while the defined basis of Compass was for indemnity where liability was asserted and demonstrated.[4]

---

**3.** The interjection of strict liability in addition to negligence occasions the confusion defining the scope of the Compass policy. Clearly, negligence was never demonstrated or even realistically contended. Consequently, a properly based contention of liability carrier indemnity obligation resulting from negligence of its insured is not presented. The premise of obligation moves to an occurrence concept of insurance indemnifying without regard to negligence premised on obligation of its insured which arises from ownership but not negligence.

The two cases cited by the majority, *Lansco Inc. v. Department of Environmental Protection,* 138 N.J.Super. 275, 350 A.2d 520 (1975), aff'd 368 A.2d 363 (1976), certification denied 73 N.J. 57, 372 A.2d 322 (1977), and *Chemical Applications Co., Inc. v. Home Indemnity Co.,* 425 F.Supp. 777 (D.Mass.1977), invoke no discussion of the subrogation conclusion, and consequently they have no precedential relation to the present

issues. At issue in those cases was coverage protection between the insured and the liability carrier without consideration of either subrogation or governmental entity liabilities issues. See likewise, *Evans v. Aetna Casualty & Surety Co.,* 107 Misc.2d 710, 435 N.Y.S.2d 933 (1981).

**4.** Although otherwise at least tentatively presented by appellee Cravens, this court has declined consideration of insurance clauses of the respective policies which would raise the escape versus excess constructional attributes as frequently invoked albeit normally only if insurance of like kind. For a discussion of excess versus escape clauses, see *Maryland Casualty Co. v. Horace Mann Insurance Co.,* 551 F.Supp. 907 (W.D.Penn.1982), aff'd 720 F.2d 664 (3d Cir.1983). See the rule restated in *Horace Mann Insurance Co. v. Continental Casualty Co.,* 54 N.C.App. 551, 284 S.E.2d 211 (1981). Cf. *Wyoming Farm Bureau Mutual Insurance Co. v. American Hardware Mutual Insurance Co.,*

A different basis for denial is to be found in the somewhat similar situations which were considered in the riot liability cases of *A & B Auto Stores of Jones St. v. City of Newark,* supra, and *Manzo v. City of Plainfield,* supra, where property-damage carriers as exposed to claims from the cities' race riots asserted subrogation against the towns which were subjected to absolute liability for property damage by statute. In denying subrogation, the court recognized actual fault of a third party and denied subrogation to the property-damage carriers. The fact that the city carried liability insurance would furthermore not justify subrogation as between the two carriers. Imposition of absolute liability did not include application of subrogation exposure to the liability carrier.

What the court actually holds here is that the property-damage carrier is entitled to subrogate as either a volunteer or as the issuer of a secondary coverage which, in either case, is directly contrary to the statement that this is not a subrogation action, and to do so not premised on the joint insured's negligence but contended on statutorily impressed absolute liability. The insurer that accepted the premium for a policy of insurance including vandalism assumed the risk that a third-party vandal would appear and cause policy-covered property damage. Cf. *Board of Education of Jordan School District v. Hales,* supra.

Synthesizing its position in subrogation letters written to a representative of Compass, Cravens stated:

"We insure the State of Wyoming on a first party basis. A claim in the amount of $95,455.58 has been submitted to us as first party carrier for an oil spill in Evanston, Wyoming. * * *

"In reviewing your policy, we feel that it should respond or at [least] participate in this loss."

And subsequently:

"We had just made payment of $96,792.06 to the State of Wyoming covering the oil spill.

"I believe you are familiar with the claim as C.G. Iversen of GAB was handling the claim on our behalf; I believe she also represented you.

"We did make full payment of the claim as we were getting pressure from the State of Wyoming and rather than put the state in the middle while we discussed responsibility, felt it best if we paid the claim.

"However, we definitely feel that you also had some, if not full, responsibility for this claim and so are looking to you for contribution."

Again in later correspondence:

"Under the facts and law as outlined above, Compass Insurance Company's policy with the State of Wyoming provides coverage for the damages resulting from the oil spill of March 19, 1984. Cravens, Dargan & Company, as subrogee of the State of Wyoming, hereby demands that Compass Insurance Company immediately pay, as required under the terms of its policy with the State of Wyoming, $96,792.06 to Cravens, Dargan & Company."

Conversely, the position of Compass is well stated and properly synthesized in its trial brief:

"As will be seen, plaintiff's lengthy argument that the Compass policy might cover the oil spill is irrelevant. The defendant will assume without conceding, for the purpose of the pending motions, that the oil spill was caused by an 'occurrence', that the pollution exclusion does not exclude coverage, and that the State of Wyoming was 'legally obligated' to pay for the cost of the clean-up, and that none of the terms of the Compass policy exclude coverage.

"However, whether the Compass policy might cover the oil spill is not the issue; Craven's claim against Compass is precluded (1) because it constitutes an impermissible attempt to subrogate against its own insurer, (2) because contribution

Wyo., 487 P.2d 320 (1971). An excellent current review of "escape," "excess," and "pro-rata" insurance clauses is found in Comment, *"Other Insurance" Conflicts in Arizona,* 19 Ariz.L.J. 475 (1987).

cannot be enforced between insurers of diverse interests, property, and risk, and (3) if contribution is allowed, the 'other insurance' clauses relieve Compass of any obligation or limit it to one percent of the loss."

Appellant there noted to the trial court, and re-emphasizes in accord with the standards of law presently existent, that Cravens was improperly attempting to subrogate against its own insured. I would agree with its characterization of this universally recognized rule firmly supported by the totality of case law and precedent that without entitlement to subrogate property damage, Cravens was also not benefited by right of contribution, since that theory is not available where policies of different kinds insure against different risks. *Granite State Insurance Company v. Employers Mutual Insurance Company*, 125 Ariz. 275, 609 P.2d 90 (1980); *Republic Insurance Co., v. United States Fire Insurance Co.*, 166 Colo. 513, 444 P.2d 868 (1968); *Indiana Insurance Company v. Sentry Insurance Company*, Ind.App., 437 N.E.2d 1381 (1982); *United Services Automobile Association v. Agricultural Insurance Co. of Watertown, New York*, 67 N.M. 333, 355 P.2d 143 (1960).

" * * * The authorities are legion that for a proportionate recovery clause to operate in the insurer's favor, or for the enforcement of contributions between insurers, there must be identity of risk." *Northland Insurance Company v. Miles*, Wyo., 446 P.2d 160, 161 (1968).

I would also agree with the characterization expressed in another subrogation-contribution-excess insurance-coverage case where in dissent Justice Harnsberger observed:

" * * * The reasoning relied upon * * *, although subtly expressed, is neither persuasive nor sufficiently impressive to warrant overriding adherence to old legal principles." *Farmers Insurance Exchange v. Fidelity & Casualty Company of New York*, supra, 374 P.2d at 766.

Two axioms are misinterpreted or ignored by the court in the conclusions made. The first is that Cravens either had ostensible or actual liability and satisfied a definable claim by payment to the state of Wyoming, or put itself in the position of a sheer volunteer without liability or obligation. *Commercial Union Insurance Co. v. Postin*, supra; *Southwest Mississippi Electric Power Association v. Harragill*, 254 Miss. 460, 182 So.2d 220 (1966). See also *Fulton v. Des Jardins*, 67 Wyo. 517, 227 P.2d 240 (1951), cited with approval in Commercial Union Insurance Co. v. Postin, supra. The second axiom that follows is that in either regard the premise upon which reimbursement is requested is based upon the nonexistent or secondary liability of Cravens and the primary liability of Compass as a matter of subrogation of a property-damage carrier against the liability carrier. Thirdly, not as a matter of an axiom, but rather as a matter of characterization, the liability status of the state of Wyoming for the oil spill in any defined dollar amount, and whether that defined liability is determinable in strict liability so as to impose a dollar liability on Compass, was and is a question upon which sufficient facts were not presented in the record for any decision; nor is a legal basis presented demonstrating compliance with the Wyoming Governmental Claims Act and other comparable requirements and criteria for an indemnity obligation to arise when any potential liability of the insured was earlier discharged by another payment medium.

I would reverse and remand for dismissal of the State of Wyoming/Cravens litigation to surcharge a liability carrier for what the property-damage carrier had paid under its insurance policy.